on behalf of the people of the state of Illinois. In our general procedure 1515 and a few, since there's only one case, we'll probably let you, unless you go wild, we'll let you go wild on behalf of the people of the state of Illinois. I was going to introduce this case as Custer's Ambush, but I'll let it dry. Well, Your Honor, if I may begin my argument.    Your Honor, my name is Stephen Richards and I represent the defendant in this case, Keith Middleton, as you know. He was convicted of first degree murder and sentenced to a very substantial prison time. I think the description of this case as Custer's Ambush from the defense point of view is quite appropriate. I will deal with issues 2, 3, and 4 in the brief, and of course I am available for questions on the remainder. But the key issue in this case, and I think it goes much beyond Keith Middleton and much beyond the facts of this case, is the prosecution's use of an undisclosed demonstrative exhibit in closing argument without any prior notice to defense, any opportunity to object, rebut, or to in any way respond to this exhibit. In an age of PowerPoints, Photoshopping, where digital evidence in particular subsets both manipulation, this sort of thing cannot and should not stand. What did the judge do when this was raised since I didn't look at the record? Well, what he did was actually a couple of different things. Let me describe the exact procedure. What happened was this was brought up apparently in rebuttal argument. I think it might have been alluded to, there's some indications it was also, it may have been used in opening and close. But it's clear that it was used in rebuttal argument. So immediately after rebuttal argument, defense counsel moved for mistrial and said this is not disclosed to us. It hasn't been admitted as evidence. We don't believe it's accurate. So that's after the jury is sent back. This is after the close of evidence. Oh, absolutely. Hang on, hang on. Sure. So evidence is closed. The state gives their closing argument. Defense gives their closing argument. State gets up in rebuttal, and it's time to go Photoshop City and argue this. Was the objection made in open court? Did the hearing about what the court wanted to do with respect to the use of this occur before the jury was sent back to deliberate, instructed and sent back to deliberate? Yes. I would have to check the record, but I am at 99% certain. That's my understanding. 99% certain. What happened is immediately after the rebuttal, before the jury's instructed, defense counsel asked for a sidebar. There's a sidebar outside the presence of the jury, and then there's the discussion. And the trial court considers it and decides not to instruct the jury on the basis that this young man, Torian Conner, did testify in some respects in a way that is consistent with this, so he allowed it to be done despite the fact that it had never been produced. Is that fair? It is fair, but let me get the details straight just so that you know that. First of all, defense counsel said we want a mistrial. That was their first request. Mistrial, no way to, without reopening the proofs essentially, to do anything about it. And we'd like the opportunity to rebut with our own Photoshop showing what he looked like with a full face mask. The judge said, well, you don't have that. Of course we don't have that. We were ambushed. The second thing the judge says is if you want, I will instruct the jury. Now at this point, the prosecutor says something which I think is kind of key and very interesting. He says, judge, are you going to ask the jury to disregard? And my guess is they probably wanted for the judge to do that. Right, so they'd have some cover. So they'd have cover. Judge doesn't do that. What the judge does do, though, is give instruction which would have been appropriate had the demonstrative evidence been admitted during evidence. Let me just add to that point. At no point during the course of the trial did Torrey Connors testify that the photos truly and accurately portrayed what occurred? Absolutely not. So that was never offered, that was never brought up during the trial? No. What was brought up was the arrest photo. And I believe the arrest photo was used not through Torrey and Connor, actually, but through a police officer just to show what photos were used in a photo array. So that was it. There was no, he never, Torrey and Connor never was shown the photo and said, well, look at the photo. Demonstrate, you know, with your hand or drawing what the mask looked like. Maybe that would have been appropriate. I don't think so, but maybe. And certainly the defense would have had an opportunity to object and to put in counter evidence. But there was no, this was just from on the defense. And as I suggested in my brief, a logical inference is that the reason it was brought up in closing was because there was an opportunity to object. Had it been brought up at an appropriate point, as any point of demonstrative evidence is, and as the procedures laid out in the case law suggest, the way you deal with demonstrative evidence is you have some sort of hearing, some sort of discussion, some sort of representation that some witness is going to say that demonstrative evidence will help me explain my testimony, will fairly depict something, and then it's either admitted or not admitted after a proper procedure in front of a judge. I mean, this action really converted the trial into a trial by ambush. So there was never any opportunity prior to the rebuttal for a motion in limine, and there never was any made as to this? Well, defense counsel represented, and the state did not disagree that defense counsel didn't know about it. It wasn't shown. He didn't know what was going to be done. Now, let me say, as a trial practitioner, because I do both, probably jack-of-all-trades, master of none, I have seen situate people who use PowerPoints nowadays. I don't use them much. I used to, but I find they're distracting. But in every recent case I've had, the prosecutors have shown me their PowerPoint that they're going to use in closing in advance. And sometimes I've seen minor things like they underline words in instructions and I let it go by, but that's what you would do. At any point during any of the argument, the post-trial motion, on this particular issue, did the state fess up as to when this was created, how it was created, and who created it? No. The only discussion I had, because I was the post-trial attorney, was I wanted to make sure that it was put into the record. And the prosecutor did put it into the record, did impound it, and made it into the record. And that's all I know about how they came up with it, or how it was produced, or when it was produced, or why it was produced. And certainly the judge didn't inquire as to any of these issues. And obviously this was kind of central to the case. If you also allow me to just give another anecdote, I had a recent trial, actually my last jury trial, in which the prosecutor did something much milder. In the closing argument, he wanted to use a measuring tape to demonstrate to the jury what 10 feet is. And he had shown it to me before. He didn't say exactly what he was going to do, but I objected during closing. And the judge said, if you've done this during trial, that's fine. Had a witness say, this is 10 feet, great. But you didn't. So you can't use your little measuring tape to measure out 10 feet. What sort of a curative instruction do you think would have taken care of the error of them throwing this up in front of the jury? My first answer is none, and my second answer is, at a minimum, disregard. That was improper. Disregard. You're not allowed to consider that at all, whether you believe it. You're not allowed to make inferences as to whether it shows anything, period. In terms of the standard of review, you're suggesting that we find that this was an abuse of Judge Burns' discretion to not instruct the jury and to not grant the motion for mistrial, correct? I believe I argued in my brief, and I can check if that de novo review would be appropriate. How is that? Well, and also I should say that I don't think it matters, because I think clearly no reasonable jury is going to do it. But you're going to have to defend the abuse of discretion standard. Well, okay. I'm going to have to defend. In other words, you're applying the abuse of discretion standard, and I'm not likely to convince you to do de novo review. I'm trying to save you time. Okay. Without waiving my position, no rational jurist would have reacted in this way. Any rational jurist at a minimum exercising his discretion would have instructed the jury to disregard. And I would suggest that any rational jurist, knowing that the prosecution had ambushed the defense in this particular way on a key issue in the case, would have granted mistrial, period. Did the trial judge apply the right legal standard in deciding whether or not to allow this demonstration? Actually, since it wasn't brought to him before, the answer is no. I mean, he never – first of all, in terms of the photo, our position would be that in general the rule is you don't alter photos. And we cite a case law in that respect. Well, the question before that is the mask was never recovered, right? Correct. So you can't really create something that doesn't exist. I could not have said that better myself, and I think I did say something similar in my brief, but that's the truth. There is no mask to make the comparison. The witness had a general impression of how much of the face was covered and testified to that. But whether this particular blocking accurately reflects what the witness believed the mask covered is a mystery, because the witness was never shown the blocking. I asked you whether truly and accurately, you know, meaning how could you if – You can't. And that's the reason why some of the older cases, including the case from the 40s I cited, said in general there's a reason. You know, I never thought of it when I was first out in practice while we do this. You have to say a photograph truly accurately depicts something. And if you want to make markings on a photograph, then you have to say, okay, with this marking, this X, is that truly and accurately depict where the car was, where the person was? And then you're allowed to do that. But you need a witness, a foundation, and some sort of procedure to get there. So I don't think the judge applied the proper legal standard. Had he, he would have said this is not admissible even. Okay, so if the case were to be remanded for a new trial, what, if any, other evidentiary issues would need to be addressed before it gets retried? Before it gets retried, assuming, again, assuming that you don't reverse that, obviously, the other issues that I think you should say need to be addressed on remand really have to do just with making sure that the evidence as to the victim's state of mind is narrowly limited. Now, the judge tried to do that, honestly. He has sustained a number of objections. But obviously, if your honors say in your opinion it's correct, you know, that the prosecutor should have not been continuing along those lines. He didn't seem to know there was an objection. This was just the exciting or enthusiastic witnesses. During one of the, the second witness, yes. The first witness, no. Because in the first witness, basically, the prosecutor keeps trying to hit that ball. Okay, he had concerns. What are the concerns? Objection sustained. Was it concerns about a person or persons? Objection sustained. Was it concerns about a person or thing? Objection sustained. And the prosecutor's argument in their brief that he was really trying to get to maybe the concerns where he couldn't find a parking space, I think that's ridiculous. Obviously, he's trying to suggest to the jury that Mr. Brown is afraid of Mr. Middleton, and that's why he's parking this car in this particular position. Any other issues? Some of the things that the prosecutor said in closing argument without going to the D.O., again, a statement in the opinion reversing saying that you would not like some of these things to be repeated would also be appropriate. And I think I cannot, other than that, I don't think I identified any really major issues upon the part of the judge. The major thing that was going on was I think the prosecutor was trying to get into Brown's state of mind, and a couple of times there was overall objections where our opinion is the judge let him go over that line. So, again, a statement that the line should not be crossed would be helpful. But otherwise, we do think that you should reverse. We do think it's an important opinion because it's an issue which comes up not only in criminal but in civil trials, and that for these reasons, Keith Middleton should be granted a new trial. And if there are no other questions, I know Your Honors are free and liberal with time today, I will reserve my remaining comments for rebuttal. Thank you. Your Honors, may I take a moment? Sure. Take your time. Thank you. Your Honors, Assistant State's Attorney Phyllis Warren on behalf of the people. What's your name again? Phyllis Warren, W-A-R-R-E-N. Your Honors. Okay, you're not on the brief. Okay. I did write the brief. Yeah, I should have. Oh, just a moment. Yeah. Is it? Yeah. Yeah. Okay. My mistake. We're ready for you. Thank you. Your Honors, the trial court did not abuse its discretion in denying counsel's motion for a mistrial at the close of the prosecutor's case. Before we get to that though, what about the trial court's failure to sustain the objection and instruct the jury to disregard something that obviously should not have been shown to them? Your Honor, there was no objection until the conclusion of the rebuttal argument. At that point in time, defense counsel then asked for a sidebar and made the motion for a mistrial. After the court indicated it was going to deny the motion for mistrial, the court then gave the jury an instruction specifically dealing with that exhibit and then instructed them fully with the full set of jury instructions. And what was the instruction specifically dealing with that exhibit, as you say? The court specifically told the jury this is not an actual photo. This is merely a demonstration. If you do not believe that this demonstration accurately reflects the evidence you heard, disregard it. And then the court went on to instruct the jury with the full pattern jury instructions. Do you have any cases you can cite for us where it's okay to use doctored mug shots in rebuttal without any foundation being laid during the trial itself? Because this is one of the more offensive things I've seen in a record. Your Honor, I do not have any cases. It's the State's position, however, though, that this is not trial by motion. The trial lawyers had enough evidence to convict this man. This is over the top. Your Honor, it's the State's position that this should not have come as an ambush or undue surprise because this was properly based on the evidence. This was a police photo of the defendant that was properly admitted into trial. And what the prosecutor did was put a mask over it. This is not a mask. They doctored it up. They dummied it up. They threw something up there. They could have done this with magic marker. And, Your Honor, they could have taken their hand and taken the prosecutor, during the rebuttal argument, could have taken their hand and placed their hand over the arrest photo, the lower half of the defendant's face, and said, remember what Torrey Connor told you? He told you that he could only see or he could see from the upper half of his face. Only a prosecutor who's worried about the quality of the eyewitness testimony would go so low as to use an exhibit like this in rebuttal. Your Honor, it's the State's position that this was properly based on the evidence, and this is no different. It would be proper for the- Let me ask what I asked him. At any time, did the State or did anybody get Torrey Connor to testify that the photo truly and accurately depicts the face of the shooter at the time of the crime? No, Your Honor. So it should not have been used, therefore, at all? Well, it's the State's position, though, that it's properly based on the evidence because Torrey Connor demonstrated- But can you get it in if you didn't get that statement in? It wasn't admitted as an exhibit. It was used as a demonstrative aid, Your Honor. We still have to lay a foundation for demonstrative evidence. And it's the State's position that there was a proper foundation laid given Torrey Connor's testimony. Torrey Connor specifically testified that he could see from above the defendant's- Show us in the record where Torrey Connors ever saw anything like the photo that's doctored up here on the left. You're correct, Your Honor, that that specific photo, absolutely, that specific photo was not shown to Torrey Connor, and Torrey Connor never testified that that was an accurate representation. However, he did testify to what the representation was. So a semi-foundation is enough. Well, Your Honor, I'm also going to direct this Court to what the trial fact who saw the demonstration that Torrey Connor made in court, where Torrey Connor took his hands and said that the mask stopped below the defendant's nose. The Court, in its ruling in this trial, specifically noted that Torrey Connor- This is based on what Torrey Connor said. Torrey Connor testified that this- Well, why don't you put the exhibit in front of Torrey Connor? Okay, is this what it looked like? Your Honor, the record is silent as to why that happened. What I can say is that Torrey Connor did testify- You're not saying what's supposed to happen is a safe guard so the jury doesn't get stumped and overly emphasize that something is not true so that you can at least have someone say whether or not that demonstrative photo is what he saw. Your Honor, it's the State's position that this does accurately reflect- Well, why don't you show it to the next guy? The record is silent as to why that did not take place, Your Honor, but it does- it's proper because it's no different had the prosecutor taken their hand and taken the arrest photo and just merely placed their hand on it. This is just a virtual demonstration. Your Honor, you said Connor did this. Why didn't the prosecutor do that at the argument? He said this is what it looked like. Why didn't he just do that at the argument? He did something totally different. Well, then it's the State's position that this is even more accurate because the prosecutor didn't use their own hand. How do you know that? Because the witness didn't say that's more accurate. No one said that's accurate. We know it's accurate because the trial court who observed what Torrey and Connor demonstrated in court- This isn't getting us anywhere. You're not going to- you already know what we think about this issue, so I would suggest you address the other issues that counsel and the justice here raised that would be issues that may be addressed on remand. That way you have protected the record, and I don't want you to be further abused because of some State's attorney who wanted to be a hero, and you're not him and you're not her, so we don't want to hurt you in this case. You're doing your best with a case that the State should have- it should have gone differently, and it didn't, so you can't do much on this issue. So just try to address those other few issues so that we make a record for whoever gets the case on remand. Thank you, Your Honor. Your Honor, I believe the other issues dealt with the state of mind and the testimony of Markeia Ambrose and Damian Parker. The record affirmatively rebuts defendant's claim that with Markeia Ambrose, there was repeated attempts to elicit improper hearsay. It's pure speculation. Counsel's comment about the State's statement in the brief about, well, we don't know what the concerns were. It could have been for a parking space, right? It's pure speculation because the objection was sustained. So for counsel to speculate in the same manner that clearly she was trying to get out impermissible hearsay, it's speculative. The judge sustained the objection. There was nothing improper that the prosecutor was trying to do with Ambrose other than give a full picture of why the victim was parking his car away. I don't know the reasons. It was sustained. Once the court indicated this is hearsay, the prosecutor said, well, look, I wasn't going to get into content, but then moved on, immediately moved on and did not revisit that issue. So there's no repeated attempt by the prosecutor for Ambrose to elicit improper hearsay. And with Parker, Parker was volunteering. I believe there's some allusion made to that this was an excited witness. Parker repeatedly was volunteering information, and the prosecutor repeatedly asked, at one point even said, you know what, Judge, I'll ask a leading question in order to avoid eliciting any improper hearsay. And Parker is allowed to testify to his observations about the victim's state. It's clearly admissible as long as it's relevant, and it was relevant in this case because Parker was explaining why they were following the van.  I don't know if there's any other comments that I can make regarding the testimony in Ambrose or Parker or the judge's rulings. Counsel also made some comments about the prosecutor's closing argument. Your honors, for the reasons stated in their brief, the comments were all proper. They were properly based on the evidence at trial, and if there was any error, anything the court finds improper about those comments, they were isolated. They were brief, and the court's instructions that arguments are not evidence, that would have cured any possible error made during argument. It's for these reasons, if there's no further questions, your honors, it's for these reasons and the reasons stated in Ambrose that we'd ask that you affirm the defendant's conviction and sentence. Thank you. Thank you. Your honor, given your comments about which issues should be addressed on possible remand, I was looking it over. I think issue five should not be addressed because if there is a remand and retrial, I intend to try the case, so issue five would become moot. That was the issue about the ineffective assistance for failing to object to the foundation. It should be effective. On that issue. Hopefully I'm always, you teed it up for me. I'm a swing at it. I know. But I don't think there's any need for your honors to consider that unless for some reason you wanted to or there's some teaching purpose. But I don't think that's going to come into play if there's a remand and a retrial. Thank you. I just want to thank you both. This is a difficult case, especially for the state, and it's especially hard for him to try and protect your record as best you can. So I appreciate your effort, and I appreciate you being short and to the point. Thank you. It's hard for all the family members to think about the prospect of a second trial.